**FAWICK AIRFLEX COMPANY INC., Plaintiff-Appellee, v. UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA, LOCAL 735 et, KRES, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21486. Decided March 6, 1950.

420

(CONN, PJ, of Sixth District; HUNSICKER, J, DOYLE, J, of Ninth District sitting by designating in the Eighth Appellate District of Ohio.)

Marshman, Hollington & Steadman, Cleveland, for plaintiff-appellee.

Davis, Davis & Handelman, Cleveland, for defendant-appellant.

**OPINION**

By DOYLE. J:

Joseph Kres was found guilty of summary contempt of the Court of Common Pleas of Cuyahoga County, as a consequence of his refusal to answer certain questions propounded to him upon cross-examination, while a witness in a trial in which he and another were charged with violations of a restraining order of the Court of Common Pleas of Cuyahoga County, which, inter alia, restricted picketing

"other than peaceably and by not more than two pickets at not more than three designated places in and about the premises"

of the Fawick Airflex Company Inc., during a strike and work stoppage brought about by Local 735 of the United Electrical Workers Union.

In the course of the hearing, on the charges of violating the restraining order, Kres, a Union official, testified in his own behalf, and, on cross-examination, was asked the following questions:

"Are you a member of the Communist Party?"
"Have you ever been a delegate as the representative at a Communist Party meeting in the State of Ohio?"
"Did you attend a State convention of the Ohio Communist Party on April 30, 1944, held at Public Hall?"

Following the objections of counsel, the trial court ordered them answered, and, the refusal of the witness to answer each of the three questions, furnished the basis for the three adjudications of guilt of summary contempt and the accompanying penalties.

An appeal on questions of law now brings the judgments before this court for review.

1. It is urged that:

"the court committed error prejudicial to the defendant and abused its discretion in permitting irrelevant and immaterial questions to the defendant as to his political affiliations and activities, to which defendant duly objected and excepted at the trial."

The record before us is replete with evidence of cruel and vicious assaults and batteries upon employees of the plant in their attempt to proceed to their respective jobs; personal property was sabotaged and destroyed; and many other acts of violence of the same general character is shown to have occurred. The entire affair had all of the aspects of a dangerous and subversive revolt against law and order and especially against one of this country's most cherished institutions—the judicial branch of the government. The appellant, Kres, was on trial, charged with contempt of court, in that he participated in the rioting.

It has long been the law of this state that a witness on cross-examination may be asked questions tending to disclose his own character and may be interrogated on specific acts or affiliations in his past life if they have a legitimate bearing upon his credit as a witness. It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination may develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony

and his credibility to a test, without which the trier of the facts cannot fairly appraise them. It is likewise the law that irrelevant questions should be excluded, if such questions are uncalled for by the circumstances of the case. The limits to which such witness may be cross-examined rests generally in the sound discretion of the court.

Under the circumstances of this case, in the administration of justice, it was a proper field of inquiry to examine into the question of the witness' membership or non-membership in the present Communist Party in America, and the order of the court to the witness to answer the questions was not an abuse of discretion.

The "circumstances of this case" as heretofore set forth, indicated an active, preconceived and planned revolt against law and order, and had all the indications of a subversive demonstration against the orders of the judicial department of the government.

In litigation involving the violation of orders of the court made in the exercise of their jurisdiction in which such circumstances are shown to exist, we hold the question to be proper on the cross-examination of one who is on trial for having violated the said court's order and who has taken the witness stand in his own defense.

Certainly, in this year of 1950, judges of the courts of America cannot shut their eyes to things well known to every intelligent layman.

The Communist Party abroad, with its American counterpart, is presently the powerful force which has caused and is causing the destiny of nations to hang in the balance in the ideological struggle between the communistic-thinking and democratic-thinking peoples of the world; the party in its struggle for power would make "merchandise of * * * American principles" and, in the process of forging ahead, it is well known that the sanctity of the truth and an oath may be, and is, pushed aside with impunity if warranted by the occasion.

Over and beyond the view expressed above, that the court did not abuse its discretion and acted legally within the limits of its authority, a witness, or a party and a witness who are identical, cannot be permitted to refuse to answer a question on the ground that it is irrelevant. To declare a rule to the contrary that a witness could decide for himself upon the relevancy or competency of a question, against the opinion of the judge presiding, would be subversive of all order in judicial proceedings. The rights of the litigants are preserved against an erroneous ruling by

the trial judge through the process of asserting prejudicial error on appeal.

2. The second assignment of error is as follows:

"The court erred to the prejudice of the defendant and abused its discretion in permitting questioning of defendant and ordering him to answer such questions when he asserted his constitutional rights against such inquiry and his privilege against self-incrimination."

Under the general heading of "Privilege Against Self-Incrimination" in VIII Wigmore on Evidence (Third Edition) and especially under Sec. 2271 thereof, the author has, in his inimitable way, discussed the question of "Who may determine the Claim." He quotes from the masterly opinion of Mitchell, Judge, in State v. Thaden, 43 Minn. 253, 45 N. W. 447, as follows:

"The problem is how to administer the rule so as to afford full protection to the witness, and at the same time prevent simulated excuses. All the authorities agree to the general proposition that the statement of the witness that the answer will tend to criminate himself is not necessarily conclusive, but that this is a question which the Court will determine from all the circumstances of the particular case, and the nature of the evidence which the witness is called upon to give. But the question on which the cases seem to differ is as what we may call the burden of proof; some holding that the statement of the witness must be accepted as true, unless it affirmatively appears from the circumstances of the particular case that he is mistaken, or acts in bad faith, while other cases hold that, to entitle a witness to the privilege of silence, the Court must be able to see from the circumstances of the case and the nature of the evidence called for, that there is reasonable ground to apprehend danger to the witness, if he is compelled to answer. * * * The difference is theoretical, rather than practical; for it would be difficult to conceive of an instance where the circumstances of the case, and the nature of the evidence called for, would be entirely neutral in their probative force upon the question whether or not there was reasonable ground to apprehend that the answer might tend to criminate the witness. After consideration of the question and an examination of the authorities, our conclusion is that the best practical rule is that laid down in some of the English cases, and adopted and followed by Chief Justice Cockburn, in Reg v. Boyes (1 B & S 311) * * *. To this we would add that, when

such reasonable apprehension of danger appears, then, inasmuch as the witness alone knows the nature of the answer he would give, he alone must decide whether it would criminate him. This, we think, is substantially what Chief Justice Marshall meant by his statement of the rule in the Burr trial." (Aaron Burr's Trial, Robertson's Rep. I, 243.)

See also: McGorray, Sheriff v. Sutter 80 Oh St 400.

The members of this court are in complete accord with the statement of Professor Wigmore that:

"This summing-up of Mr. Justice Mitchell leaves nothing to be added, and ought to remain the last word in the development of the rule."

In the case under consideration, it was for the court to determine from the circumstances of the case and the nature of the testimony sought, whether there was reasonable ground to apprehend danger to the witness from being compelled to answer. The court's ruling that there was not reasonable ground to apprehend self-crimination was sound in fact and law. It is not a crime to be a member of the Communist Party. If the witness were not a member, no ignominy would touch him because of that connection. If he were a member, his membership in the intransigent group was of his own choosing, and, as such member, he could not complain on the ground of being degraded in the eyes of the community, if his answer had a legitimate bearing on his credibility as a witness.

It is claimed by the appellant that:

"To inquire into and to require answers from the defendant, or any witness for that matter, as to his political faith or belief, affiliation or activity, is an infringement upon his constitutional rights of freedom of speech, press, assembly, thought and association, that is guaranteed him by the first amendment to the United States Constitution. These essential freedoms are protected under the Fourteenth Amendment to the United States Constitution from infringement or interference by any state of the Union."

It is no longer open to doubt that, liberty of speech and of the press, and liberty of silence, are within the liberties safeguarded by the clauses of the first and fourteenth amendments of the Constitution of the United States. These general guarantees are safeguarded in the Constitutions of the

various States of the Union. But the guaranteed personal liberty is not an absolute right, and never has been, giving immunity for every use or abuse of it. Things evil in their nature or dangerous to the public welfare have never been protected from the public glare under the liberty of silence guaranteed by the Constitution.

We find nothing in the record before us indicating a denial to the appellant of the guarantees embraced within the Constitution of the State or Nation.

See: Lawson v. United States 176 Fed. (2d) 49.

3. The third assignment of error is in the following language:

"The court erred, to the prejudice of the defendant and abused its discretion, in finding the defendant guilty of summary contempt of court." .

The inherent power of courts to punish contempts committed in the presence of the court during the proceedings of a trial is supported by authorities too numerous to mention. It is no longer open to question that the refusal of a witness to testify or to answer pertinent questions which do no violence to a witness' privileges and immunities, constitute summary contempts and may be punished as such.

"* * * such power, although arbitrary in its nature * * * is absolutely essential to the protection of the courts in the discharge of their functions. Without it, judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them."

Ex Parte Terry, 128 U. S. 289, 313; 32 L. Ed. 405, 412.
See also: Fisher v. Pace, Sheriff, 9 L. Ed. (U. S.) 435.
In the matter of **Lands, 146 Oh St 589 at p. 595.**

We find the claims under this assignment of error to be not maintained.

4. The fourth assignment of error alleges that:

"The proceedings of the lower court were irregular and unauthorized by law, and constituted abuse of discretion, by which defendant-appellant was denied a fair trial."

The record before this court indicates a difficult trial. In fact, all trials of this kind in recent years seem to have been attended with vigorous challenges and denials, in which sometimes the patience of the judge presiding in the particular case has been taxed to its limit.

As we view the record, we do not find that the defendant was not accorded a fair trial. Nor do we find that "the proceedings * * * were irregular * * * unauthorized by law (or) * * * constituted (an) abuse of discretion" as claimed by the appellant. On the contrary, we find that the proceedings were regular, authorized by law and that the acts of the trial court were all within the limits of its authority with the single exception which will be discussed in the following paragraph.

5. As heretofore noted in this opinion, the appellant was found guilty of three separate acts of contempt based upon his refusal to answer three separate questions.

It appears to the members of this court that the questions were of such character that they should be treated as an inquiry into but a single subject. The first question asked the witness directly was whether he was a member of the Communist Party. When he refused to answer, other questions were then asked, which, if answered in the affirmative, would have established an inference that he was such member. In fact, the entire inquiry was directed toward the establishment of but one fact. The witness' refusal to answer the three questions under discussion, constituted, in the opinion of the members of this court, but a single contempt, for the reason that they all had to do with the same subject matter.

In accordance with the views expressed, the judgment of contempt based upon the refusal to answer the first question will be affirmed, and the judgments based upon the refusal to answer the second and third questions will be reversed and as to them final judgment will be rendered for the appellant.

CONN, PJ, HUNSICKER, J, concur.