**UNITED STATES v. COSTELLO.**

No. 265, Docket 22380.

United States Court of Appeals
Second Circuit.

Argued May 12, 1952.

Decided July 3, 1952.

Writ of Certiorari Denied Nov. 10, 1952.

See 73 S.Ct. 166.

Spence, Hotchkiss, Parker & Duryee, New York City, Kenneth M. Spence, Ernest Angell, Julius J. Teller, New York City, and Huyler C. Held, Great Neck, N. Y., of counsel, for Frank Costello, defendant-appellant.

Myles J. Lane, United States Attorney, New York City, Joseph P. Martin, Chief, Criminal Division, Syracuse, Robert Martin and Stanley D. Robinson, Asst. U. S. Atty., New York City, of counsel, for United States of America, plaintiff-appellee.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The defendant, Frank Costello, was convicted of ten[1] separate contempts of the United States Senate Crime Investigation Committee, 2 U.S.C.A. § 192, and was sentenced to a term of eighteen months imprisonment and to pay a fine of $5,000.

Counts 1, 3 and 4 of the indictment charged the defendant with refusal to answer the following questions: (1) "What is your net worth?", (3) "Do you owe any sums of money in excess of $10,000 to any person?", and (4) "What is the total indebtedness, Mr. Costello?" As to each of these questions, the defendant rested his refusal to answer on the ground that his answers might tend to incriminate him. At the trial the defendant conceded that the Committee was lawfully created and organized; that he was properly subpoenaed; and that the stenographer's minutes of the hearings were accurate. No question was raised as to the relevancy of the questions to the scope of the Committee's inquiry. The only issue presented was whether a privilege against self-incrimination was properly asserted. The court below ruled, as a matter of law, that it was not because the defendant had no "reasonable belief * * * that disclosure or answer would furnish evidence which would tend to incriminate him."

In the recent case of Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118, the Supreme Court said that the claim of privilege should be sustained unless it is " * * * 'perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such a tendency' to incriminate." 341 U.S. at page 488, 71 S.Ct. at page 819. We think it is fairly obvious that under this test, the privilege was validly asserted by the defendant and that the convictions under Counts 1, 3 and 4 must be reversed. The statements of the Committee's counsel as to the subjects concerning which he intended to examine Costello and the Committee's interim report, issued after Costello had testified in executive session as to his financial resources, which described Costello as one of the leaders of a major crime syndicate, let alone the obvious income tax implications of the questions asked, could have sufficed to create a reasonable apprehension in the mind of the defendant that his answers might be incriminating. The fact that the defendant had previously stated to the Committee that he "always upheld the Constitution and the laws" did not remove the possibility that answers to specific questions might incriminate and we think that a contrary inference was not permissible. See People ex rel. Taylor v. Forbes, 143 N.Y. 219, 230, 38 N.E. 303, 306, where the New York Court of Appeals, in an opinion by O'Brien, J., said: "The witness * * * [by affirmations of innocence] did not waive his right to remain silent when it was sought to draw from him some fact or circumstance which, in his judgment, might form another link in the chain of facts, and capable of being used under any circumstances to his detriment or peril." Nor did the defendant "waive" that right when he gave testimony as to his assets or when he agreed to furnish the Committee with a complete financial statement. The position of the defendant in that respect was not unlike that of the bankrupt in Arndstein v. McCarthy, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138, and McCarthy v. Arndstein, 262 U.S. 355, 43 S.Ct. 562, 67 L.Ed. 1023. There the bankrupt Arndstein had filed schedules purporting to show his assets and liabilities and had answered certain questions relating thereto, but refused to answer over 400 other questions on the ground that his answers might be incriminating. He was committed to jail for contempt, and upon an appeal from the denial of a writ of habeas corpus, the Supreme Court in the first Arndstein case held that since the schedules standing alone did not amount to an admission of guilt or furnish clear proof of crime, " * * * the mere filing of them did not constitute a waiver of the right to stop short whenever the bankrupt could. fairly claim that to answer might tend to incriminate him." 254 U.S. at page 72, 41 S.Ct. at page 26. The second Arndstein case dealt with the question whether the bankrupt had lost his privilege by having answered without objection similar ques-

---

1. The indictment contained an additional charge which was dismissed by the court.

tions relating to his finances. The court's holding was the same, in other words, that so long as the testimony voluntarily given did not amount to an admission or proof of guilt, the bankrupt " * * * was entitled to decline to answer further questions when so to do might tend to incriminate him." 262 U.S. at page 360, 43 S.Ct. at page 563. It is not contended here, nor is it a fact, that Costello's previous answers constituted an admission or proof of any crime; consequently, he did not by giving them destroy his privilege as to the questions he refused to answer.

The remaining counts of the indictment— 5 through 11—relate to the defendant's conduct at hearings held on March 15 and 16, 1951. Counts 5 and 6 of the indictment charged the defendant with wilful default in terminating his appearance before the Committee without leave and in refusing on March 15, 1951, to give any testimony whatever pertinent to the question under inquiry. Count 7 was based on his failure on the same day to answer the question whether he was familiar with the testimony of McLaughlin. When he appeared before the Committee on the morning of March 15, his attorney stated that the defendant was too ill to testify and requested an adjournment of the examination. After colloquy between the Committee and his attorney, Costello refused to give any further testimony, saying: "You heard my statement through Mr. Wolf, and I stand by it, and under no condition will I testify from here in, until I am well enough." The chairman, Senator Kefauver, thereupon instructed Mr. Halley, the Committee's counsel, to proceed with the questioning of the witness and he was asked a question which he refused to answer, but instead reiterated his intention of leaving the hearing room. At that point, Mr. Halley instructed him as to the seriousness of that act and told him to obtain an affidavit from a physician if he was too ill to give testimony. Costello's attorney thereupon produced a physician's certificate which stated that the defendant was suffering from acute laryngotracheitis and that

he should remain in bed. The Committee rejected this certificate and, after further colloquy, Costello was directed to answer the question[2] but he refused and left the room.

Count 8 of the indictment charged that the defendant had wilfully defaulted in refusing to give any testimony whatever at the hearing on March 16. Counts 9, 10 and 11 dealt with his refusal to answer specific questions on that date. On March 16 the physician, whose certificate had been presented to the Committee the day before, appeared before the Committee and testified that in his opinion Costello was capable of testifying for an hour or so a day. The defendant was then called before the Committee and informed of this testimony, but he presented another certificate, this time from his regular physician, stating that in the latter's opinion sustained conversation by the defendant would be dangerous to his health. The defendant requested an adjournment but the Committee refused and proceeded to question him, at which time the following colloquy took place:

"The Chairman. Well, let's try a few questions and see how we get along.

"Go ahead, Mr. Halley.

"Mr. Halley. Mr. Costello, did you have a meeting with William O'Dwyer in the year 1942?

"Mr. Costello. I refuse to go further with the questioning—answering the questions—until I feel fully well and capable.

"The Chairman. Mr. Costello, it wouldn't strain your voice if you just put the mike up a little closer so we could hear.

"Mr. Halley. Mr. Costello, do you know Mr. James Moran?

"The Chairman. Let's cut the cameras off. Let's not have any noise.

"Mr. Costello. I refuse to answer the question.

"Mr. Halley. Do you know Mr. James Moran?

2. The exact wording of the question he was directed to answer was: "Mr. Costello, would you state whether or not you are familiar with testimony given yesterday by Mr. Francis McLaughlin?"

"The Chairman. Just a minute. You are directed to answer for a short while. I think you can answer a few questions this afternoon.

"Mr. Costello. I don't care to answer any questions.

"The Chairman. It is not a matter whether you care to answer them, Mr. Costello.

"Mr. Costello. I don't feel I am fit to answer any questions today and answer them truthfully and sensibly.

"The Chairman. What was the last question?

"Mr. Halley. Do you know Mr. James Moran?

"Mr. Costello. I couldn't answer the question today.

"Mr. Halley. Do you know Mr. Frank Bals?

"Mr. Costello. I am not going to answer the question today.

"The Chairman. Well, you understand you are being directed to answer these questions?

"Mr. Costello. And I am answering them, tell you—

"The Chairman. There is no use continuing if he is not going to answer them."

After further discussion it was agreed that the Committee would appoint a physician to examine the defendant and he was excused from the hearing.

We are of the opinion that the convictions on Counts 7, 9, 10 and 11 must be reversed. Each of those counts dealt with the defendant's refusal to answer a specific question put to him after he had flatly refused to give any further testimony on that particular day. Certainly the refusal to testify was an act in contempt of the Committee for which the defendant was subject to the punishment prescribed by the statute. But when the defendant made his position clear, the Committee could not multiply the contempt, and the punishment, by continuing to ask him questions each time eliciting the same answer: his refusal to give *any* testimony. In other words, the contempt was total when he stated that he would not testify, and the refusals thereafter to answer specific questions can not be considered as anything more than expressions of his intention to adhere to his earlier statement and as such were not separately punishable. Cf. Maxwell v. Rives, 11 Nev. 213; Fawick Airflex Co. Inc. v. United Electrical, Radio & Machine Workers of America, Ohio App., 92 N.E.2d 431; People ex rel. Amarante v. McDonnell, Sup., 100 N.Y.S.2d 463.

It is urged by the defendant that Counts 5, 6 and 8 are also defective for the reason that the resolution of the Senate citing him for contempt, required by 2 U.S. C.A. § 194,[3] was based only on the refusal to answer certain questions and that the indictment must therefore be limited to the acts of contempt contained in the resolution, the text of which is quoted in the margin.[4]

3. "§ 194. *Witnesses failing to testify or produce records*

"Whenever a witness summoned as mentioned in section 192 fails to appear to testify or fails to produce any books, papers, records, or documents, as required, or whenever any witness so summoned refuses to answer any question pertinent to the subject under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee or subcommittee of either House of Congress, and the fact of such failure or failures is reported to either House while Congress is in session, or when Congress is not in session, a statement of fact constituting such failure is reported to and filed with the President of the Senate or the Speaker of the House, it shall be the duty of the said President of the Senate or Speaker of the House, as the case may be, to certify, and he shall so certify, the statement of facts aforesaid under the seal of the Senate or House, as the case may be, to the appropriate United States attorney, whose duty it shall be to bring the matter before the grand jury for its action. As amended July 13, 1936, c. 884, 49 Stat. 2041; June 22, 1938, c. 594, 52 Stat. 942."

4. "Resolved, That the President of the Senate certify the report of the Special Committee to Investigate Organized Crime in Interstate Commerce of the

It is argued that since there was no charge of wilfulness in the resolution, there could be no indictment based on wilful default. We do not believe that section 194 is to be so construed or restricted. It merely requires a certification of the facts to the appropriate United States Attorney who is charged with bringing the matter before the grand jury. A certification under this section means only that the Senate has elected to have the contempt punished as a misdemeanor; this method is but an alternative one for vindicating the authority of Congress. Jurney v. MacCracken, 294 U.S. 125, 55 S.Ct. 375, 79 L.Ed. 802. Moreover, the Committee's Report, which set out in full what transpired at the hearings on the instances of the claimed defaults, was attached to the resolution as certified by the Senate. So, under any interpretation of the statute, the resolution was broad enough to support the indictment.

The defendant also attacks Counts 5, 6 and 8 on the ground that his conduct did not obstruct the Committee's inquiry because he later returned and answered all the questions asked of him by the Committee. In support of this contention he argues that his refusal to testify on the 15th and 16th of March was not wilful, but that, in fact, he intended to return when he felt that he was in condition to testify. We think the charge of the trial court and the jury's verdict are a complete answer to this contention. The court charged the jury as follows:

"* * * when the defendant appeared before the Committee he was required by law to give testimony on all matters pertinent to the inquiry being conducted by the Committee. The law is that a witness does not have the legal right to dictate the conditions under which he will or will not testify, or the conditions under which having appeared he will remain in attendance.

United States Senate as to the refusal of Frank Costello to answer certain questions in response to subpena duly issued, before the said special committee, together with all the facts in connection therewith, under the seal of the United States

"This does not mean, however, that a witness must either remain in attendance or testify when he is physically or mentally unable to do so or where there is reasonable basis for belief by him that by so doing his health would be seriously impaired. That is a question which is within your province to decide and on which the Government has the burden of proof.

"You are charged that when the defendant appeared before the Committee he was required by law to remain in attendance and not to depart from the presence of the Committee without leave of the Committee so long as he was physically able to so remain and so long as he was able to do so without reasonable basis for belief by him that his health would be seriously impaired.

\* \* \* \* \* \* \*

"To find that the defendant acted wilfully you must find that he did not act in good faith when he left the presence of the Committee, or when he refused to give any testimony. A belief on the part of the defendant that he lawfully could act as he did or the fact that he might have been advised by his attorney that he lawfully could act as he did, is no justification for his acts and may not be considered by you in determining whether the defendant acted in good faith."

█ The court's charge was a correct statement of the law and the jury's verdict is conclusive on the question whether the default was wilfully committed.

█ Finally, objection is made to the exclusion of certain evidence and to the charge of the court. Evidence that the defendant attended Committee Hearings on March 19, 20 and 21 and was then willing to answer the questions asked of him was offered to show that his previous defaults did

Senate, to the United States attorney for the southern district of New York, to the end that the said Frank Costello may be proceeded against in the manner and form provided by law." Congressional Record, March 30, 1951, p. 3133.

not obstruct the investigation. As we have indicated above in our approval of the court's charge to the jury, such evidence was irrelevant and was properly excluded and no mention thereof in the charge was required. The exclusion of the transcript of the testimony before the Committee of Dr. Panettiere was proper as it was clearly hearsay and there was no showing that the doctor was unable to testify at the trial.

The judgment of convictions on Counts 5, 6 and 8 is affirmed and reversed as to Counts 1, 3, 4, 7, 9, 10 and 11.