**STATE, Plaintiff, v. ARNOLD (and 7 others), Defendants.**

Common Pleas Court, Summit County.

Nos. 26254 to 26261, inclusive. Decided October 8, 1954.

Alva Russell, Pros. Atty., Jackson Morris, Asst. Pros. Atty., Akron, for plaintiff.

Jack B. Dworken, Cleveland, Thelma Furry, Akron, for defendants.

## OPINION

By WATTERS, J.

The Un-American Activities Commission of Ohio under present (§§103.31 to 103.88 R. C.) held a regular session in Akron, Ohio, on October 6 and 7, 1953. The eight defendants were subpoenaed to attend, did attend, and were sworn, but refused to answer the questions contained in the indictments or charges against them individually. There was a quorum of the Commission present each day. Because of their refusal to answer, the Commission did authorize this prosecution for contempt. It is stipulated that the allegations of fact in the indictments or charges of contempt are true. So really only questions of law are presented. The matters were presented to the Summit County Grand Jury where indictments or charges of contempt were made against each defendant for failing to answer the questions presented to each defendant as contained in the various (10) counts in each respective indictment or charge.

Each of the indictments or charges had various counts where the question asked had nothing to do with Communist Party membership or activity and could have been answered

without any real fear of incriminating the witness.

But the witness in each instance, knowing the purpose of all questions was to inquire concerning his or her connections and/or activities in or with the Communist Party, refused to answer any of the questions listed and obviously upon the advice of his or her counsel there present.

But the respective charges show that each defendant refused to answer questions about his or her membership in the party and his or her taking part in its activities, and his or her association with known Communists.

The defendants all agreed to a joint trial. Each defendant through counsel agreed with the court that the alleged charges were not criminal offenses but civil, but each demanded a jury trial. The court ruled on that matter fully as shown by the record, but will again set forth its reasoning herein:

Old §76-31 GC, §103.34 R. C., provides the Powers and Duties of the Un-American Activities Commission.

Old §76-32 GC, §103.35 R. C., Powers of Chairman as to Witnesses, provides in part—

"—or on the refusal of any person—to testify to any matters regarding which he may be lawfully interrogated or to comply with §2705.02 R. C., the chairman may be authorized by a majority of the members sitting at the time the alleged offense is committed, to cause a proceeding for contempt to be filed and prosecuted in the Court of Common Pleas of any county under §§2705.03 to 2705.09 inclusive, R. C."

Now, §2705.02 R. C. referred to in §103.35 R. C., provides as follows in part:

"A person guilty of any of the following acts may be punished as for a contempt—."

Part (c)—"A refusal to answer as a witness when lawfully required."

Old §12141 GC, §2705.06 R. C., headed "Trial by the Court" provides upon the day of trial the court shall investigate the charge, etc.

3 C. C. 268—2 C. D. 149, Amon v. Johnson, holds no jury trial is provided.

Sec. 2705.07 R. C. provides "The court shall then determine whether the accused is guilty of the contempt charged."

The punishment provided is a maximum of ten days in jail and $500.00 fine.

In this court's opinion, the legislature has squarely placed the alleged contempt or contempts under §§2705.03 to 2705.09 inclusive, R. C., which are the ordinary quasi criminal statutes employed in civil cases like alleged violation of injunctions and

orders in civil cases, such as in divorce, labor picketing disputes and like matters in which a jury is never allowed nor contemplated or permitted.

Ordinarily the charge is filed in writing before the Clerk by affidavit or otherwise notifying the person charged of the specific charges involved or claimed against him.

Judge Emmons said in his ruling in these cases:

"The fact that 15 people of the Grand Jury heard testimony and returned an indictment makes that charge in writing an instrument of the greatest solemnity and formality that our form of government offers. Whether it is called an indictment or charge makes no difference. It is in writing and found a true bill by the Grand Jury and meets the requirements of §2705.03 R. C."

Judge Webber in Canton, Stark County, where in similar cases indictments were returned, held in ruling on a motion to quash the indictment, that the indictment answered the necessity of a charge being filed as a civil matter.

Later the same court on demurrer to the indictment ruled that the matter was not a criminal offense but a civil matter and that a civil charge should be filed with the Clerk and the trial proceed without a jury.

In this court's opinion the charges filed by way of indictment would have no greater effect than an affidavit, and charge a misdemeanor and fully answer the requirements of §2705.03 R. C. etc., and no jury trial is allowable.

In the court's opinion, where the legislature in §103.35 R. C. quoted in part above provided as underscored by this court, it meant that a majority of the members sitting at the hearing may if they see fit authorize the chairman to cause a proceeding for contempt to be filed, and if they do, the proceeding is to be filed under §§2705.03 to 2705.09 inclusive, R. C.

In other words, under the so-called civil or quasi criminal statutes. No other procedure is set forth or provided nor is the chairman given any discretion.

For the reasons above stated, the court ruled the defendants not entitled to a jury trial and that the indictments or charges filed were a proper way in which to bring the matter before the court.

See also, 87 Oh Ap 371, Fawick v. Electric Workers; 148 Oh St 73, Castings Company v. Steel Workers; 56 Abs 419, Fawick v. Electric Workers. (Judge Doyle, 8th Court of Appeals.)

The constitutional question: The main question raised by the defendants and each of them is whether or not each of the defendants could claim privilege in refusing to answer the questions put to each on the grounds that the answer or

answers would incriminate him or tend to do so under the Fifth Amendment to the United States Constitution, and under **Article 1, Section 10, of the Constitution of Ohio.**

The United States Constitution provides in part (5th Amendment),—

"—nor shall any person—be compelled in any criminal case to be a witness against himself."

The **Ohio Constitution (Article I Section 10)** provides:

"No person shall be compelled in any criminal case to be a witness against himself."

However, it has been held since the early case of Baron v. Baltimore, 7 Peters 243, that the 5th Amendment is no limitation on any state or state agency.

See also Palko v. Connecticut, 302 U. S. 319.

The first ten amendments to the United States Constitution (Bill of Rights), including the 5th Amendment, were enacted for the purpose of placing restrictions and limitations upon the Federal Government and its agencies, and are not limitation upon the state governments and hence it is not available to these defendants.

The question then is whether or not the defendants were justified under the Ohio Constitutional provision against self-incrimination in refusing to answer the questions or any of the questions propounded.

It will be remembered that the United States Smith Act against subversive activities was in force at the time of this hearing, and Ohio passed its anti-subversive activities acts August 7, 1953, to-wit §§2921.21 to 2921.27 R. C., effective November 7, 1953.

Before the Smith Act was passed by Congress, in proceedings before Congress and other Federal agencies a witness could not successfully refuse to answer questions concerning his Communistic membership or activities or like questions.

Since the passage of the United States Smith Act against subversive activities, witnesses before Congressional Committees and other Federal agencies can successfully refuse to answer questions regarding their Communistic membership and activities under the Fifth Amendment because the Smith Act made subversive acts a crime.

In substance the Smith Act, among other things, made it a Federal offense ·to knowingly advocate the desirability of the overthrow of this government by force or violence, or to be a member of an organization which advocates or teaches, etc., this principle.

This rule was laid down since the Smith Act in:—Blau v. United States 340 U. S. 159 (1950).

The court held that Mrs. Blau did not have to answer questions put to her about her communistic activities, in view of the Smith Act, even though her answers would not support a conviction of her, standing alone, but would have furnished one link in the chain of evidence which might lead to her conviction under the said Smith Act.

It is because of said decision and the Smith Act that witnesses before the Un-American Activities Commission of Congress and before other Federal agencies have been able to escape contempt conviction for refusing to answer questions concerning Communistic membership and activities of the witness.

And it was directly because of this situation that Congress under the urging and recommendation of Attorney General Brownell just in the past few weeks passed an act granting immunity from prosecution, under the Smith and other U. S. laws, to witnesses who otherwise could assert the Fifth Amendment and refuse to answer.

The situation as it now stands is this: The witness can be granted immunity from prosecution, and if he still refuses to answer can be successfully punished for contempt of the inquiring body.

Some interesting cases before the Smith Act are:

Mason v. United States, 244 U. S. 362; Barsky v. United States, 167 Fed. 2nd 241; Lawson v. United States, 176 Fed. 2nd 49; State v. James, 221 Pacific 2nd 482; **Fawick Co. v. Electrical Workers, 56 Abs 419.**

So when the defendants were questioned the Smith Act was in full force and effect, but the present Ohio Statutes against subversion passed August 7, 1953 in Ohio (§§2921.21 to 2921.27 R. C.) were not in force.

So the question presents itself further as follows: Had the present defendants answered or admitted that they were members of the Communist party or had participated in its activities would they not be giving evidence as a part of a chain which might lead to their conviction under the U. S. Smith Act?

And even though the answer to the above question is "yes," could they refuse to answer the questions put to them because the answers could incriminate them under the U. S. Smith Act.

Before discussing the answer to this question, two things must be noted:

**First:** When these witnesses were questioned there was no law in effect in Ohio resembling the Smith Act against subversive activities and no law against belonging to the Communist Party.

**Second:** Even had there been any remote danger of an Ohio prosecution our immunity statute protecting witnesses who appear before the Ohio Legislature or a committee or subcommittee thereof would have afforded the witness **automatically** full and complete protection from prosecution in Ohio and the authorities hold the witness need not request the immunity. This is old **§60 GC,** now **§101.44 R. C.,** and in force over twenty years. It is as follows:

"Except a person who in writing requests permission to appear before a Committee or sub-committee of the General Assembly, or of either House thereof, or who in writing waives the rights, privileges and immunities granted by this section **the testimony of a witness examined before a Committee or sub-Committee, shall not be used as evidence in a criminal proceeding against such witness nor shall the person be prosecuted** or subjected to a penalty or a forfeiture on account of a transaction, matter or thing concerning which he testifies or produces evidence. This section does not exempt a witness from the penalties for perjury." (Emphasis by this court.)

A leading case which early laid down the rule that an immunity statute deprives a witness of his right to refuse to answer an incriminating question, even though he might be subject to prosecution in some other jurisdiction, is:

Brown v. Walker, 161 U. S. 591. The questions asked were in a Federal investigation. A Federal statute gave him Federal immunity from prosecution. It was argued that Brown might be subject to a state court prosecution where the Federal immunity statute would not protect him. The court said this possibility would not avail him and he must answer.

In Jack v. Kansas, 199 U. S. 372, the hearing was a Kansas State investigation of violations of the State statute against price fixing of coal. Under the Kansas statute Jack was immune from prosecution but not under the Federal statute. The defendant Jack refused to answer and was convicted of contempt. The Supreme Court affirmed his conviction.

The court also held that a state cannot by statute grant immunity to a witness from prosecution by the United States for violation of a Federal statute.

In other words, Ohio could not under its immunity statute set forth above grant a witness immunity from prosecution under the Smith Act.

In Hale v. Henkel, 201 U. S. 43, held "—A witness cannot refuse to testify before a Federal Grand July in face of a Federal statute granting immunity from prosecution as to

matters sworn to, because the immunity does not extend to prosecutions in a state court. In granting immunity, the only danger to be guarded against is one within the same jurisdiction and under the same sovereignty."

To the same effect see United States v. Murdock, 284 U. S. 141, paragraph (3) of syllabus.

In Feldman v. United States, 322 U. S. 487 (1944), Feldman was tried in Federal Court for fraudulent use of the mails. The government offered his incriminating testimony given before New York State court in which state he was by statute immune from prosecution.

The court held his state court testimony admissible and not forbidden by the Fifth Amendment.

A different view was taken by the Michigan Supreme Court in People v. Den Uyl, 318 Michigan 645 or 29 N. W. 2nd 284.

There one Hemans testified before a Michigan Grand Jury and under state immunity from prosecution as to bribery, etc. He then left the state. He was indicted by a Federal Grand Jury for the offense of crossing state lines to avoid testifying in the trial against those he testified against in the state grand jury.

He was brought back on the Federal charge and refused to testify in the preliminary hearing against those charged on the ground his testimony would incriminate him under his Federal indictment.

The court ruled he was entitled to refuse to testify.

The court did say, however, "We are aware that holdings at variance with the above can be found in other jurisdictions, including holdings in the Federal Court." .

It must be borne in bind, though, that the witness, Hemans, **was at the time under indictment as stated above for the federal charge,** and by reason of that was returned to Michigan against his will.

I believe the decision was grounded on the emphasis above.

In re Watson 293 Michigan 263 cited in the Den Uyl case, the opposite result was reached and the court cited this from Wigmore on Evidence, Section 2258.

"By the weight of authority, the right to claim the privilege against self-incrimination merely because of possible subjection to the criminal laws of a foreign jurisdiction is denied."

But the rule in Michrigan as stated in the Watson case, the Cohen case, 295 N. W. 481, Schnitzler 295 N. W. 478. the Ward case, 295 N. W. 483, is probably as follows:

"Whenever the danger of prosecution for a federal offense is substantial and imminent as a result of disclosures to be

made under a grant of immunity by the state, such immunity is insufficient to overcome the privilege against self-incrimination."

However, in the Ward case, 295 N. W. 483 (Michigan), at page 485 sets forth the federal rule as set forth in United States v. Murdock (284 U. S. 141), supra to the effect that the privilege against self-incrimination does not extend to protect the witness as to matters that may tend to incriminate him under the laws of another jurisdiction.

The court then said, page 485, that "for the purpose of this case it is unnecessary to consider whether we should extend the implication of the language in the Watson case to conform to the Federal rule."

The court also said in the Ward case, "We put aside as remote and insubstantial the supposed peril of prosecution in the Federal court."

So Michigan apparently will follow the Federal rule under such facts and their majority rule where the peril of prosecution in the Federal or other jurisdiction is substantial as said in the Schnitzler case, 295 N. W. 478.

But the witness cannot hide behind a fanciful or possible danger of prosecution in the other jurisdiction. The danger of prosecution must be reasonable.

None of the Michigan cases involved questions concerning subversive activities, but with the exception of the Watson case all grew out of the one man grand jury investigation of Judge Ferguson into gambling protection and racketeering mostly in Detroit.

In the case of U. S. v. De Carlo, 102 Fed. Supp. 597, Judge McNamee, 1952 N. Ohio District Court, upheld the right of a witness to refuse to answer incriminating questions concerning criminal violations under Ohio laws put to him by the Kefauver Committee, a Federal investigating agency.

The reason was the state could not force him to testify as to incriminations of state laws where no immunity is given, so the Federal agency could not. And it being a Federal agency investigation, the Fifth Amendment would prevail and could be invoked by the defendant witness as it is a restraint and limitation against the Federal government (Barrou v. Baltimore), etc., and its agencies.

## CONCLUSION

What the Supreme Court of Ohio will say on this constitutional question upon which it has the final interpretation is not known nor do we have any appeals court decision as yet.

The common pleas courts, though differing on the correct procedure, have all ruled that the witness must answer.

It is the opinion of this court that it should follow the majority state rule which is also known as the federal rule to the effect that where the witness is granted state immunity, automatically, as in Ohio, where the proceedings are state conducted, the fact that the answer may possibly, or even reasonably, result in federal or other jurisdictional prosecution, will not justify the witness in refusing to answer. He must answer the questions.

Sec. 2921.21 R. C., etc., which in effect is the Ohio "Smith" Act making subversive acts, etc., a felony was passed August 7, 1953, and before the Un-American Activities Commission hearing in Akron, October 6th and 7th, 1953, and became effective November 7, 1953.

But even though that act had been effective when the hearing was had here, the Ohio immunity statute concerning testimony before the legislature and its committees, now §101.44 R. C. was in force and for many years before.

This, as stated before, automatically granted the witness immunity and the defendant witnesses were compelled to answer.

Counsel for the defendants suggest that the Un-American Activities Commission had practically passed out of existence in October because the Ohio Anti-Subversive act had been passed in August but this court has no control over that.

Personally I do not believe the various defendants would have been prosecuted federally, although it would not be unreasonable for them to assume that they probably would be.

The court finds the defendant witnesses and each of them were in contempt for refusal to answer each and every question put to each defendant respectively.

So the court finds that each and every question put to each and every defendant respectively, most of which questions had for its ultimate goal the ascertainment of whether or not said witness was a member of the Communist party and his or her activities in said connection. However, many of the questions obviously had no direct bearing on the subject matter of the inquiry, and as said before, no truthful answer to those could be incriminating.

Judge Doyle. of our 9th Court of Appeals, sitting by designation as a member of the 8th District Court of Appeals in Cuyahoga County, wrote the opinion in **Fawick Airflex Company, Incorporated, v. Electrical Workers, etc., 56 Abs 419,** a contempt case against one Joseph Kres, a union member involved in strike picketing, ruled as follows:

Syllabus, par. (7)

"* * * **A witness who has refused to answer three questions**

relating to his membership in the Communist Party is guilty of but one act of contempt." (Emphasis by this court.)

Accordingly, the court applying said rule to the instant defendants, finds each defendant guilty of one act of contempt for refusing to answer the various questions put to each defendant respectively.