Fuld, J.
Anthony Peter Biela was one of the 60-odd guests who had gathered at the country estate of Joseph Barbara in Apalachin, New York, on a November day in 1957. This gathering, having attracted considerable attention from law enforcement officials, became the target of investigation by the Grand Jury of Tioga County. Biela, called as a witness, made two appearances before that body. From the beginning, he refused to answer any questions concerning the ‘1 Apalachin meeting ’ ’, as it has come to be known, on the ground that to do so might tend to incriminate him and, in the course of his two appearances before the Grand Jury, he persisted in the claim of privilege and declined to answer 17 questions about that same subject. Thereupon, at the request of the District Attorney of Tioga County, the Grand Jury, acting pursuant to the authority vested in it by section 2447 of the Penal Law, “ conferred immunity ” upon Biela and ordered him, following the procedure prescribed by the statute, to answer the questions previously put to him. The same 17 questions were again asked and Biela, reiterating his reliance upon the privilege, again refused to answer.
As a consequence of his refusal, the Grand Jury indicted him, charging him, in 17 different counts, with 17 separate crimes of contempt in violation of section 600 of the Penal Law. The defendant waived his right to a jury and went to trial before the County Judge. The latter, finding him guilty on all 17 counts, sentenced him to 60 days in jail upon each, to run concurrently, and imposed a fine of $250 on each count, for a total fine of $4,250.
Before proceeding to an elaboration of the question which prompted the grant of leave to appeal to this court, we consider briefly the only two other points urged by the defendant which warrant discussion: (1) that the immunity provided by section 2447 of the Penal Law had not been properly conferred and (2) that, in any event, such immunity was not broad enough to assure him the protection guaranteed by the Constitution. As to the first, it is necessary only to observe that a reading of section 2447 makes it manifest that the Grand Jury had *576 unquestioned power to confer immunity upon Biela and direct him to answer under pain of prosecution for contempt. And, as to the second point, it is equally clear, under current decisions, that a witness may be compelled to answer in a state proceeding, as long as the immunity granted by the state protects against prosecution under its laws, even though it may not protect against prosecution by the federal government or by other states. (See, e.g., Mills v. Louisiana, 360 U. S. 230; Knapp v. Schweitzer, 357 U. S. 371; Matter of Commission of Investigation of State of N. Y. v. Lombardozzi, 5 N Y 2d 1026, appeal dismissed sub nom. Castellano v. Commission of Investigation, 361 U. S. 7.)
We come, now, to the real question in the case, namely, whether the defendant is guilty of 17 crimes of contempt or of one. Concerning this, it is our opinion that, while there can be no doubt that Biela’s conduct before the Grand Jury constituted criminal contempt under section 600 of the Penal Law, his conviction of 17 separate crimes of contempt, each susceptible to punishment of a year in prison, was totally unjustified.
It is quite true, as the Appellate Division observed, that ‘ ‘ the questions [asked of the defendant] were by no means the same question rephrased ”, but, in a case such as the present, where the refusal to answer was grounded, albeit mistakenly, on the privilege against self incrimination, the circumstance that no two questions could have been answered by a single response is beside the point. What is of significance is that it was apparent from the very start of his interrogation that Biela, relying upon the privilege, would decline to answer any question bearing on the “Apalachin meeting ”, and that the questions, different though they were from one another, all related to that one subject. This being so, he is guilty of the single contempt of refusing to give testimony concerning the Apalachin gathering, rather than 17 contempts for refusal to answer individual questions about it. (See, e.g., Yates v. United States, 355 U. S. 66, 73; United States v. Costello, 198 F. 2d 200, 204, cert. denied 344 U. S. 874; United States v. Orman, 207 F. 2d 148, 160; Maxwell v. Rives, 11 Nev. 213, 221; Fawick Airflex Co. v. United Elec., Radio & Mach. Workers, 56 Ohio L. Abs. 419, 426, 92 N. E. 2d 431, 436, appeal dismissed 154 Ohio St. 206.)
*577 Any other result impresses us as offensive, for, if each separate reassertion of privilege and refusal to answer were to be treated as a distinct contempt, there would be no limit to the number of contempts for which Riela could have been held. The District Attorney could just as well have asked 60 questions about Apalachin — for instance, whether Riela knew each of the 60 individuals reputed to have been present — as 17, and, if each could become the predicate of a distinct contempt, the limit of punishment would then depend only on the extent of the District Attorney’s ingenuity and whim. As the Supreme Court said in the somewhat similar case of Yates v. United States (355 U. S. 66, 73, supra), “ the prosecution cannot multiply contempts by repeated questioning on the same subject of inquiry within which a recalcitrant witness already has refused answers. ’ ’
Riela, under existing law, may well have been under the necessity, once he asserted the privilege, of repeating the claim as to each and every question asked him, lest an answer to any one be deemed to effect a complete waiver of the privilege. (See, e.g., People v. Cassidy, 213 N. Y. 388, 394; Rogers v. United States, 340 U. S. 367, 372-374; Brown v. Walker, 161 U. S. 591, 597; 8 Wigmore, Evidence [3d ed., 1940], pp. 438-439.) This being so — to paraphrase what was said in the Costello case (198 F. 2d 200, 204, supra) — the contempt was total when the defendant made it clear that he would not answer questions about Apalachin on the ground of self incrimination and his repeated refusals may not properly be considered as anything more than expressions of his intention to adhere to his initial assertion of the privilege; and, surely, they were not separately punishable. The contempt here to be punished is Riela’s misguided refusal to give any testimony about Apalachin, and not his reiteration of that refusal in response to the many questions which the District Attorney elected to put to him.
People v. Saperstein (2 N Y 2d 210, cert, denied 335 U. S. 946), upon which the People strongly rely, does not support their contrary position; the situation with which we there dealt was essentially different from the one now before us. Saperstein was adjudged guilty of five crimes of contempt because of his evasiveness or, more specifically, his refusal “ to state definitely ” who were the participants in five separate telephone conversations *578 which had been wire tapped. Each of the contempts was based not upon a refusal grounded on any claim of privilege, but, among other things, on his patently evasive testimony that he did not know, and could not tell, whether he himself had participated in those telephone conversations. These refusals came at different points during the course of testimony which was otherwise freely given, and each refusal was unrelated to every other one. Under such circumstances, there could be no assurance, after the witness had refused to answer the question with respect to the first phone call, that he would likewise refuse to answer the later questions about the other conversations. It was not possible in Saperstein, as it was here, to predict or foresee the pattern of refusal which necessarily attends the assertion of a claim of privilege.
In short, what distinguishes this case from People v. Saperstein is that here we have a claim of privilege which ‘ ‘ carved out an area of refusal ”. (Yates v. United States, 355 U. S. 66, 73, supra.) In the present case, the District Attorney necessarily knew, ahead of time, that the claim of privilege once asserted would be repeated, while in Saperstein the prosecutor had to continue questioning to find the limits of the defendant’s refusal to answer. In Saperstein, in other words, the District Attorney was engaged in bona fide interrogation, in the sense that he could reasonably have supposed that the witness would answer each of the questions asked, while here the District Attorney repeated 17 questions knowing full well from Riela’s response to his first query that he would not answer any of them.
The defendant committed but a single contempt with relation to one subject; his conviction of 17 separate crimes was, therefore, impermissible and the sentences imposed may not stand.
The judgment should be reversed and the case remitted to the County Court of Tioga County for resentence.
Chief Judge Desmond and Judges Dye, Froessel, Van Voorhis, Burke and Foster concur.
Judgment reversed, etc.