Howard A. Jones, J.
Defendant’s omnibus motion, originally returnable before the late Justice Murtagh and now fully submitted before this court, is disposed of as follows:
MOTION TO DISMISS BASED ON UNCONSTITUTIONALITY OF SECTION 215.51 OF THE PENAL LAW
1. In challenging the constitutionality of this statute defining criminal contempt in the first degree, on grounds of vagueness amounting to violation of due process, defendant has assumed a heavy burden — a burden that he has clearly not met. The court rejects as entirely specious any claim or suggestion by defendant that his refusal to answer questions before a Grand Jury, after having been granted immunity, is justifiable because the statute in question does not spell out what is a legal or proper interrogatory. Such a determination or judgment is clearly not his to make, if the statute is to have any practical efficacy. (People v Breindel, 73 Mise 2d 734, affd 45 AD2d 691, affd 35 NY2d 928.) Subsequent judicial review of the procedures used and screening by the court of the questions posed to a witness, are sufficient to assure the integrity of due process in these matters. Moreover, the appellate courts of this State more than once have had opportunity in cases before them to strike down the statute in question and have declined to do so. (See People v Ianniello, 36 NY2d 137.)
Accordingly, this branch of the motion is denied.
MOTION TO DISMISS CERTAIN COUNTS BASED ON IRRELEVANCY
2. Denied. As to the first count, the question which defendant refused to answer after grant of immunity cannot as a matter of law be said to be irrelevant to the subject matter of the Grand Jury’s investigation. That subject matter is clearly stated in the preamble to the first count and for our purposes here the relevancy of any interrogatory related thereto need not be conclusively established. It is sufficient if the relevancy of the question to the subject matter under investigation is susceptible of intelligent estimate, or even if there is no more *978 than a justifiable suspicion of a relationship between the question asked and the subject matter under investigation. (Matter of Koota v Colombo, 25 AD2d 497, affd 17 NY2d 147, cert den 384 US 1001.) Moreover, in order to make such intelligent estimate or to demonstrate such justifiable suspicion, no single question need be examined standing alone. Indeed, relevancy of any one question may often appear only when viewed in context with the other questions and answers (or refusals to answer) that precede or follow it. (Matter of Vario v County Ct., Nassau County, 32 AD2d 1038.) This court has carefully examined the transcript of the defendant’s various appearances before the Grand Jury and finds the questions relevant, both in and of themselves and in the aggregate.
3. Denied. As to the fifth and six counts, the court similarly finds that the questions asked, at the very least, meet the test of relevancy based on the criteria discussed above. The further attack on these counts, premised on the claim that the subject matters being considered were beyond the investigative and prosecutorial jurisdiction of the Special Prosecutor, is also rejected. The broad wording of Executive Order No. 57 (9 NYCRR 1.57), creating and defining the jurisdiction of the Special Prosecutor, clearly covers the matters then being investigated and, a fortiori, any questions relevant thereto.
MOTION TO DISMISS DUPLICITOUS COUNTS
4. Denied with respect to counts one through seven; granted with respect to count eight.
It is undisputed that a Special Grand Jury, duly convened in Queens County, was conducting the instant investigation in two different areas: (1) whether officers of the New York City Police Department were repeatedly bribed by the defendant and others involved in organized criminal activities for the purpose of obstructing pending police investigations; and (2) whether the defendant had corruptly conspired with others to dispose of certain criminal cases pending in Queens County.
On December 18, 1974, the defendant was subpoenaed to appear and did appear before this Special Grand Jury. He was advised as to the immunity being granted him, and after much discussion was finally sworn but refused to answer even preliminary questions, claiming that he desired to obtain counsel. He was directed to reappear on January 8, 1975, and on that date, after being reminded that he was still under oath and had full immunity, he invoked Fifth Amendment *979 rights, even refusing to answer questions relating to whether he had consulted an attorney or whether he would answer any other questions. He was then ordered to reappear on January 15, and agreed to do so. On that date, he reappeared and was again briefly reminded that he was under oath and had immunity. The prosecutor further reminded defendant that, to the prosecutor’s knowledge, defendant had consulted a certain named attorney who had explained defendant’s rights and obligations to him when appearing before the Grand Jury. Defendant did not deny this, but rather again refused to answer any preliminary questions, including a request to spell his name, as well as all the subsequent questions put to him. These latter questions on January 15, for the first time, concerned both of the subject areas that were under investigation, and all refusals to answer them were again based on Fifth Amendment grounds. He was again ordered to reappear on January 22 and to contact the prosecutor through his attorney if he changed his mind with respect to his unwillingness to testify. No prior contact apparently having been made, defendant reappeared on January 22, was again briefly reminded that he was under oath and had been granted full immunity and again, upon claim of privilege, refused to answer questions that again pinpointed the two areas under investigation. Throughout all these appearances, defendant was advised of the potential charges that could result against him based on his refusal to answer or his answering falsely. The instant indictment, which resulted, charges defendant with eight counts of criminal contempt in the first degree (Penal Law, § 215.51).
Defendant now moves to dismiss certain counts of the indictment for duplicitousness or multiplicity. Because each count charges criminal contempt committed on all of the last three dates of appearance, i.e., January 8, 15 and 22, without regard to whether each particular question was actually asked on each of those dates, it was difficult for the court (and obviously for defendant also) to identify the exact date of the alleged contempt with respect to each cited question. Now, having examined the minutes, the court notes that the first seven counts relate to relevant questions that were asked and answers refused during only the January 15 appearance; the eighth count relates to a relevant question asked and answer refused during only the January 22 appearance. Even though defendant does not specifically identify which counts he claims *980 are duplicitous of which, the court, in the interest of justice, will treat the defendant’s motion as pertaining to all the counts.
In the area of criminal contempt, there appears to be little in the way of established precedent concerning what are proper bases for such charges. The leading case at the moment appears to be People v Riela (7 NY2d 571). This 1960 decision is especially valuable because the Court of Appeals in that opinion analyzed and distinguished the previous case of People v Saperstein (2 NY2d 210, cert den 353 US 946). In Riela, the court said (pp 577-578):
"The contempt was total when the defendant made it clear that he would not answer questions about Apalachin on the ground of self incrimination and his repeated refusals may not properly be considered as anything more than expressions of his intention to adhere to his initial assertion of the privilege; and, surely, they were not separately punishable”.
"[In contrast] Saperstein was adjudged guilty of five crimes of contempt because of his evasiveness or, more specifically, his refusal 'to state definitely’ who were the participants in five separate telephone conversations which had been wire tapped. Each of the contempts was based not upon a refusal grounded on any claim of privilege, but, among other things, on his patently evasive testimony that he did not know, and could not tell, whether he himself had participated in those telephone conversations. These refusals came at different points during the course of testimony which was otherwise freely given, and each refusal was unrelated to every other one. Under such circumstances, there could be no assurance, after the witness had refused to answer the question with respect to the first phone call, that he would likewise refuse to answer the later questions about the other conversations. It was not. possible in Saperstein, as it was here, to predict or foresee the pattern of refusal which necessarily attends the assertion of a claim of privilege.
"In short, what distinguishes this case from People v. Saperstein is that here we have a claim of privilege which 'carved out an area of refusal’. (Yates v. United States, 355 U. S. 66, 73, supra.) In the present case, the District Attorney necessarily knew, ahead of time, that the claim of privilege once asserted would be repeated while in Saperstein the prosecutor had to continue questioning to find the limits of the defendant’s refusal to answer. In Saperstein, in other words, the *981 District Attorney was engaged in bona fide interrogation, in the sense that he could reasonably have supposed that the witness would answer each of the questions asked, while here the District Attorney repeated 17 questions knowing full well from Eiela’s response to his first query that he would not answer any of them.
"The defendant committed but a single contempt with relation to one subject; his conviction of 17 separate crimes, was therefore, impermissible and the sentences imposed may not stand.” (Emphasis added.)
Hence, two distinct rules based on two different fact patterns have been formulated by the Court of Appeals to gauge duplicitousness: First, the number of separate subject areas covered by the questioning, and second, the ability or inability of the examiner to recognize in advance the scope of the witness’ refusal to answer which has to be measured, at least in part, by the nature of the claim underlying each refusal. Yet to be resolved is the application of these two rules to a fact pattern that lends itself amenable to both. In such circumstances, the question is which one should predominate, at least initially, to resolve any issue of duplicitousness raised during pretrial proceedings.
In the absence of any further appellate authority on this question the court finds comfortable reliance on the guidance of common sense and logic. After due deliberation on the question, as posed, the court is persuaded to the conclusion that it is the number of separate subject areas covered that should control when examining multiple Penal Law contempt charges for duplicitousness rather than the nature of the asserted grounds underlying several refusals to answer. In view of the overriding concern and the unquestioned right that society has to compel testimony by an immunized witness before a Grand Jury in any area or areas that may be under investigation, it would seem manifestly unfair to assert that concern or exercise that right in such a way as to impose the same liability against one witness who answers questions in some areas but not in others, under assorted claims of right or privilege, as against another witness who adamantly and unjustifiably refuses to answer all questions in all areas under a single claim.
In Riela, the Court of Appeals had before it a situation involving several contumacious refusals to answer several questions, all concerned with a single subject area. Hence, *982 that court ruled that only a single charge of contempt could flow. It would seem to follow that if other subject areas had been sought, other contempt charges would have been found to be justified. This logical extension of the rationale applied in Riela would appear to provide the most appropriate basis for determining the independent validity of each of the several counts of the indictment now before this court. Moreover, and far from doing any violence to the related rationale of Saperstein, the court’s determination here actually provides a useful parallel, one that is apparently not yet clearly defined in our case law, to the theory of multiple criminal contempts already recognized in Saperstein, but on grounds more appropriate to the needs that exist here.
By further extension of the "subject area rule” as now posed, and still in keeping with the Riela rationale, it would not seem to matter whether the subject areas thus identified were covered in a single appearance before the Grand Jury or over a period of several appearances. Once an immunized witness has declared to a Grand Jury that he refuses to testify about a particular subject matter, subsequent refusals concerning the same matter during successive appearances before that Grand Jury, whether separated by days or weeks or months, should be seen simply as continuations of the initial refusal, and only one Penal Law contempt charge covering that area should therefore lie. The crucial test to be applied is whether the later question was substantially similar to a prior question in terms of specific subject area or whether it sought information covering any new and distinguishable subject area, matter, occurrence or transaction such that the prosecutor could not have known from the prior refusal that a similar refusal would later be forthcoming.
It should be emphasized at this juncture that the court is referring here only to Penal Law contempt charges as they may appear in an indictment or information and not to contempt charges or adjudications under section 750 of the Judiciary Law, as to which an entirely different rationale is not only recognized but heartily endorsed. It is clear that successive adjudications and punishments for judicial con-tempts can be had, though not beyond the limits of consistency with due process, for repeated refusals to answer or evasions of the same question asked on different dates before a Grand Jury after judicial directions to answer. In such instances, each subsequent refusal clearly constitutes a new act *983 of contempt of court and, justifiably, is not deemed a mere continuation of the previous refusal. (Matter of Second Additional Grand Jury v Grillo, 12 NY2d 206.) Nor does a second or third punishment violate the rule against multiple jeopardy. (Matter of Ushkowitz v Helfand, 15 NY2d 713; People v Colombo, 29 NY2d 1.) Nor does such citation and punishment preclude later Penal Law charges concerning the very same conduct on jeopardy grounds, since the aims and interests sought to be served by each type of charge are recognized to be wholly distinct.
At this pretrial juncture, the court can perceive the defendant’s concern regarding duplicitousness within the framework of the eight counts of this indictment as presently worded. Although there may be common subject areas covered in all eight counts and even though the last count appears to be later in point of time to the other counts in the indictment, the court does not consider dismissal of the entire indictment to be the only, or even an appropriate, remedy.
As a whole, the indictment properly charges crimes supported by the evidence presented. Dismissal as a remedy in such circumstances was rejected in People v Chestnut (26 NY2d 481, 492) and in People v Mulligan (29 NY2d 20, 24), in both of which the Court of Appeals suggested other solutions:
"The sentencing judges in the case before us, apparently recognizing that the defendants were guilty of only a single act of contempt, directed that the sentences imposed on each of the several counts were to run concurrently. It may well be that the imposition of concurrent sentences eliminated any actual prejudice to the defendants but proper application of the rule required the court to ñnd the defendants guilty of but a single contempt, sentence each of them for that crime and dismiss all the other counts. ” (People v Chestnut, supra, p 492; emphasis added.)
"As to the further contention that the indictment is 'duplicitous’, we need but note that, if the argument has merit, the result will be not dismissal of that indictment but, rather, a limitation on the quantum of punishment to be imposed if the defendant is convicted after trial.” (People v Mulligan, supra, p 24; emphasis added.)
As must be noted, the entire indictment in Mulligan was reinstated for trial purposes notwithstanding the claimed duplicitousness, the only injunction having been a limitation of punishment after a finding of guilt. In Chestnut, where the *984 Trial Judges sat both as triers of facts and finders of law, the dismissal of the duplicitous counts was clearly part of their law-finding and sentencing capacity, brought to bear after their findings of fact on all the counts. Both cases stand for the proposition that any question of subject área duplicitousness in an indictment may be resolved as a matter of law that is properly determinable only after findings of fact have been completed; and even then, it is to be seen as primarily affecting the punishment that may be imposed. Of course, a properly framed indictment in the first instance would obviate these complicated and potentially prejudicial problems.
Accordingly, the motion to dismiss the indictment for duplicitousness, at this pretrial juncture, as it pertains to the first seven counts, or any of them is denied. A mere reading of the language of these counts, on their face, is an insufficient basis for dismissing any of them for duplicitousness without the further factual exposition that may be expected upon a trial of this matter. Even upon such exposition, the court does not perceive any serious prejudice to the defendant if all of the counts are submitted to the jury, in view of the rationale of Chestnut and Mulligan.
In this connection, however, it must be observed that the indictment will undoubtedly have to be amended, and perhaps should be amended before trial, to correct what appears to be án obvious overstatement of the dates on which the various contempts were allegedly committed. The relevant questions recited in the indictment were not put to the defendant on all of his appearances before the Grand Jury, based upon the court’s review of the Grand Jury minutes, and the inclusion of all such dates in each count of the indictment is clearly a defect. The Special Prosecutor may wish to propose appropriate amendments.
The motion as it pertains to count eight is on a somewhat different footing. A mere reading of this charge indicates that the refusal to answer a question concerning the alleged "fixing” of a case occurred on January 22, 1975, subsequent to the date of the refusal charged in the preceding counts, i.e., January 15. Two of these preceding counts (i.e., the fourth and seventh) on their face, charge defendant with refusals to answer questions on this prior date relating to what appears to be the same subject area. It is sufficiently clear, therefore, even at this juncture that the eighth count is duplicitous of the fourth and seventh not only in terms of apparent subject *985 matter but, more importantly, in that the refusal therein was simply, and clearly, no more than a "continuing” of the same refusal during a subsequent Grand Jury appearance. Under these circumstances, as discussed, the later repeated refusal is not properly the subject of a separate charge in the indictment. While the court does not consider it clearly erroneous to retain even this count, it is not unmindful of the potential prejudice to the defendant that could flow from the sheer number of counts presented to a trial jury, even though that danger is somewhat minimal here. Hence, the motion as addressed to the eighth count is granted and that count is hereby dismissed.
The court need not now decide whether evidence pertaining to the subject matter of this dismissed count will be permitted as proof of contumaciousness concerning either counts four and seven or any of the other counts. It is sufficient to state at this juncture that such proof would certainly not be of "another” crime and would clearly have at least some relevancy as to intent and culpable mental state.
. [Additional material omitted from publication.]