ROGERS, Circuit Judge,
concurring.
I join the court in holding that the federal prosecutor and the employee in the D.C. Superior Court Juror Office are entitled to qualified immunity because it was not “clearly established” at the time of Atherton’s dismissal from the grand jury that either violated his constitutional rights. I write separately because Atherton’s challenge has uncovered the absence of a clear procedure for dismissing a grand juror.
The Supreme Court has emphasized that
notwithstanding periodic criticism, much of which is superficial, overlooking relevant history, the grand jury continues to function as a barrier to reckless or unfounded charges.... Its historic office has been to provide a shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance.
United States v. Mandujano, 425 U.S. 564, 571, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). *518 So too this court has recognized the important role played by the grand jury in our constitutional framework, noting that despite criticism that it “is not independent at all,” the grand jury remains “vital[ ] and importan[t],” and “[t]o disregard [its] role ... would be to effectively emasculate the Grand Jury Clause of the Constitution.” United States v. Coachman, 752 F.2d 685, 690 n. 29 (D.C.Cir.1985). More recently, the Supreme Court has reaffirmed that the grand jury acts as a shield, stating that there is “[n]o doubt” that “the Fifth Amendment grand jury right serves a vital function in providing for a body of citizens that acts as a check on prosecutorial power.” United States v. Cotton, 535 U.S. 625, 634, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). Whether or not these characterizations of the grand jury always match reality, the idea of the independent grand jury as a “buffer or referee between the Government and the people” is a well-established part of our jurisprudence. United States v. Williams, 504 U.S. 36, 47, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992). Moreover, the Supreme Court has observed that, “with the exception of voting, for most citizens the honor and privilege of jury duty is their most significant opportunity to participate in the democratic process.” Powers v. Ohio, 499 U.S. 400, 407, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).
Little appears to have been written on the subject of the dismissal of a grand juror, an action, which, depending on who takes it, implicates and could possibly threaten the heralded independence of the grand jury. The Grand jury operates “at arm’s length” from the Judicial Branch, Williams, 504 U.S. at 47, 112 S.Ct. 1735, and its proceedings are cloaked in secrecy for various reasons, notably in order to ensure the free deliberation and protection of the grand jurors themselves, see Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. 211, 219 n. 10, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); see also D.C.Super. Ct.Crim. R. 6(e)(2); Fed. R.Crim.P. 6(e)(2). Given the insulation of grand jury procedures from outside scrutiny, it is unsurprising to discover that there is a dearth of judicial and academic commentary on the subject.
The absence of formal discussion, however, is not total. The United States District Court for the Eastern Division of the Northern District of Illinois has published a Grand Jury Foreperson’s Handbook, which addresses the issue of “problematic jury members.” (1997), http://www.ilnd. uscourts.gov/JURY/Grndjury.htm; see also Susan W. Brenner, Grand Jurors Speak, in Grand Jury 2.0: Modern Perspectives on the Grand Jury 42 (Roger Anthony Fairfax, Jr. ed., 2011) (discussing the Handbook). This HANDBOOK makes clear that it is the “prerogative of the grand jury foreperson to recommend the dismissal of any grand jury member for due cause,” but that it is the “Chief Judge” who will make the ultimate “decision.” Similarly, the U.S. Department of Justice’s Grand Jury Practice Manual states that “the staff and/or the United States Attorney can move to excuse [a] grand juror for cause”; use of the verb “move” and the exclusion of “staff’ as well as prosecutors from the final decision-making process implies requisite judicial involvement. MANUAL § 1(D)(6) (1991) (emphasis added), http://www.justice.gov/atr/public/ guidelines/206542.htm# ID6.
Atherton was sworn as a substitute grand juror and served on a grand jury for three days, when he was “summarily and permanently dismissed” for allegedly being “disruptive.” Atherton v. District of Columbia, 567 F.3d 672, 676 (D.C.Cir. 2009) (“Atherton II ”); see also Affidavit of Chief Judge Rufus G. King III, D.C. Superior Court, Nov. 14, 2006 (“King Aff.”). He was dismissed by the Juror Office em *519 ployee based on the Assistant United States Attorney’s report that other grand jurors were complaining about him. See Atherton II, 567 F.3d at 676. So far as the record indicates, his dismissal was an ad hoc response. See id. at 676-77. Neither the employee’s job description nor local rule nor court order explicitly authorized her to dismiss a sworn juror. Some time after Atherton’s dismissal, the then-Chief Judge of the D.C. Superior Court changed the procedures to require that he be “consulted before any imposition of grand jury discipline.” King Aff. During oral argument, however, counsel for the United States Attorney’s Office and the District of Columbia could shed no light on what is intended by “consultation.” Does the Chief Judge make the dismissal decision? If not, who does?
The rules of the D.C. Superior Court provide that a grand jury “shall serve until discharged by the Chief Judge or other judge designated by the Chief Judge.” D.C.Super. Ct.Crim. R. 6(g) (“Rule 6(g)”). Nonetheless, the record in this case indicates that the procedure for dismissing a grand juror is unclear. Whatever clarity there may be in the statutes and rules, see, e.g., D.C.Code § ll-1908(b)(4); Rule 6(g), is, as a practical matter, undermined by the plausible but conflicting interpretations offered by the parties and the informal practice at the time of Atherton’s dismissal, see Atherton v. D.C. Office of the Mayor, 813 F.Supp.2d 78, 84 (D.D.C.2011).[1] Indeed, in “[ajssuming arguendo that Mathews [v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976),] requires a judicial determination and formal process prior to dismissal from a grand jury,” Op. at 515, the court notes that “the procedural due process owed a grand juror seems as unclear today as it was over a decade ago when Atherton was dismissed from jury service on April 11, 2001,” Op. at 515.
Although neither counsel could shed light on the content of the charge to the grand jurors, they clarified that “convening judges” charge grand juries in the D.C. Superior Court. See Appellees’ Joint Notice Re Grand Jury Instructions, Oct. 17, 2012, at 1. It would seem to follow, given the involvement of a judge in the convening and charging of the grand jury, that the dismissal of a grand juror is also a decision for a judge. In Atherton’s case, the Chief Judge’s understanding of the seriousness of dismissal of a grand juror might be inferred from his agreement to meet with Atherton and his later decision to change the informal procedures for grand jury discipline. Further clarification of the procedures for dismissing a grand juror, however, would be in the interests of protecting the integrity and independence of the grand jury.

. The parties’ divergent interpretations of the statutes and rules on juror dismissal reveal they are susceptible to misinterpretation— e.g., whether the Court's authority to exclude jurors under D.C.Code § 11 — 1908(b) is exclusively to be exercised by a judge, see id. §11-1902(4) (defining "Court”). Compare Appellant’s Br. at 27 and Reply Br. at 20 with Appellee Zachem’s Br. at 45-46 and Appellee Bailey-Jones’s Br. at 24-25. Of course, neither informal policies nor practices can defeat constitutional or statutory requirements. Cf. Op. at 517 n.2.