KAREN NELSON MOORE, Circuit Judge,
concurring in part and dissenting in part.
Long ago, the Supreme Court recognized that “no [person] can be twice lawfully punished for the same offence ... when a second punishment is proposed in the same court, on the same facts, for the same statutory offence.” Ex parte Lange, 85 U.S. 163, 168, 18 Wall. 163, 21 L.Ed. 872 (1873). “Successive and separate con-tempts,” however, “are punishable as separate offenses.” Bullock v. United States, 265 F.2d 683, 695 (6th Cir.1959). In 2010, the government indicted thirty members of the Somali Outlaws on sex-trafficking charges. In 2012, Abdullahi Farah refused to testify at the trial of nine of the Somali Outlaws named in the indictment. For his refusal, Farah was found guilty of criminal contempt, in violation of 18 U.S.C. § 401(3), and given a sentence of four months of imprisonment. A year later, Farah refused to testify again, this time at a deposition to be used in different trials against the other twenty-one defendants. Once again, the government indicted Fa-rah for criminal contempt under § 401(3); he was found guilty and sentenced to prison. In my view, these two convictions punished two different acts and did not offend the Fifth Amendment. Because the lead opinion sees things differently, I respectfully dissent from Part III.A.
I.
On April 16, 2012, the government was in the middle of trying nine of the Somali Outlaws. See R. 2325 (Minute Entry) (Page ID # 12374) (Case No. 3: 10-cr-260). As part of its case against those nine defendants, the government wanted to call Farah as a witness to “identify] particular defendants” and “identify] particular defendants’ voices.” R. 23 at 6:20-22 (Apr. 18, 2012 Hr’g Tr.) (Page ID # 74) (Case No. 3:12-cr-85). Despite being held as a material witness “[djuring the course of this trial at this time,” id. at 7:17-18 (Page ID # 75) (emphasis added), Farah refused to testify, and in response, the government filed a motion to compel his testimony in the ongoing trial. See R. 2 at 1 (Mot. to Compel) (Page ID #2) (Case No. 3:12-cr-85). Two days later, the district court held a hearing, found Farah in civil contempt for “refusing] to testify in the Adan case,” and explained that “[i]f [Farah] [did not] change [his] mind, [he would] be held in custody pending the duration of the Adan trial.” R. 23 at 17:25, 18:6-8 (Apr. 18, 2012 Hr’g Tr.) (Page ID # 85, 86) (Case No. 3:12-cr-85). *617 The district court further stated that if Farah failed to “testify by the end of the Adan trial, [it] intended] to hold [him] in criminal contempt.” Id. at 18:12-13 (Page ID # 86). On April 25, 2012, the government filed a notice with the district court that “it closed its proof’ in the trial of the first nine Somali Outlaws.[1] R. 7 at l(Notice Re: Material Witness) (Page ID # 15) (Case No. 3:12-er-85). On June 7, 2012, the district court held a bench trial and convicted Farah of criminal contempt in violation of 18 U.S.C. § 401(3). R. 34 at 9 (D.CtOp.) (Page ID #159) (Case No. 3:12-cr-85). The district court then sentenced Farah to four months of imprisonment. R. 39 at 2 (D.Ct. J.) (Page ID # 178) (Case No. 3:12-cr-85).
On July 24, 2012, Farah filed a “Motion for Review of Detention Order,” arguing in part that 18 U.S.C. § 3144 (the material-witness statute) does not permit the continued detention of a purported material witness if “ ‘the testimony of such witness can adequately be secured by deposition.’ ” R. 41 at 7-8 (Mot. for Review) (Page ID # 192-93) (Case No. 3:12-cr-85) (quoting 18 U.S.C. § 3144). On August 23, 2012, the district court granted this motion in part, ordering that a “deposition shall occur before Farah’s sentence for criminal contempt expires in approximately October[ ] 2012.” R. 48 at 3 (D.Ct.Dep.Order) (Page ID #291) (Case No. 3:12-cr-85).
The district court scheduled Farah’s deposition for September 12, 2012. Once again, Farah refused to testify, and the government filed a motion for Farah to be held in civil contempt. R. 73 at 1 (Gov’t Contempt Mot.) (Page ID #471) (Case No. 3:12-er85). The district court decided that
holding Mr. Farah in civil contempt at this stage of the proceedings is not appropriate. The Court ordered the deposition of Mr. Farah in order to secure his testimony and eliminate the need for his appearance as a witness at future trials in the Adan case. Mr. Farah’s refusal to testify at the deposition is tantamount to refusing to testify at each of the upcoming trials. Therefore, Mr. Farah no longer needs an opportunity to purge himself of the contempt....
R. 80 at 5 (D. Ct. 9/20/12 Order) (Page ID # 566) (Case No. 3:12-cr-85). If the government wished to punish Farah for his continued refusal, the district court suggested that the government “seek to charge Mr. Farah with criminal contempt” or “seek to have the grand jury issue an indictment for obstruction of justice.” Id.
On October 3, 2012, the government followed this advice and secured an indictment, which charged [Farah] with violating 18 U.S.C. § 401(3), among other statutes, for “refusing to testify in the deposition held September 12, 2012” in contravention of the district court’s order. R. 1 at 2 (Indictment) (Page ID #2) (Case No. 3:12-cr-196). On April 17, 2013, after a trial, the jury convicted Farah of violating § 401(3).
II.
On appeal, Farah argues that this second conviction for violating 18 U.S.C. § 401(3) runs afoul of the Double Jeopardy Clause. The majority agrees, holding that “Farah’s refusal to testify was carved out in April of 2012 and his subsequent refusals ‘fell within the limits drawn’ at the April 18, 2012 hearing and ‘only one contempt is shown on the facts of this case.’ ” Majority Op. at 608 (quoting Yates v. United States, 355 U.S. 66, 74, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957)). Certainly, Yates is the *618 logical starting point; however, ray understanding of that case and its progeny leads me to the opposite conclusion regarding Farah’s double jeopardy claim.
In Yates, a defendant — Oleta O’Connor Yates' — refused to answer eleven questions over two days of one trial, and for these eleven refusals, she was convicted on eleven charges of criminal contempt. Id. at 72, 78 S.Ct. 128. The Supreme Court overturned ten of the convictions, holding that Yates’s refusal to testify during one proceeding constituted a single, continuing contempt. Id. at 74, 78 S.Ct. 128. By overturning all but one of the convictions, the Supreme Court made “clear that the prosecution cannot multiply contempts by repeated questioning on the same subject of inquiry within which a recalcitrant witness already has refused answers.” Id. at 73, 78 S.Ct. 128. After all, a witness could refuse to testify at a proceeding entirely and would be guilty of only one contempt. Id. It would make little sense to subject “a witness willing to testify freely as to all areas of investigation but one ... to more numerous charges of contempt than a witness unwilling to give any testimony at all.” Id. Under Yates, therefore, a witness can “carve[] out an area of refusal” and decline to answer any questions within the boundaries of her carve out, and the government can bring only one criminal-contempt charge for refusing to testify at that proceeding. Id.
This reading of Yates, limited as it is to a witness’s refusal to testify during a single proceeding, is logical and uncontroversial. Courts across the country share this view. See, e.g., United States v. Lach, 874 F.2d 1543, 1549 (11th Cir.1989) (“Yates ... stands only for the proposition that repeated or serial refusals to answer identical or similar questions in a single proceeding may not be used to establish multiple, separate offenses for what is, in essence, a single, continuing contempt.”); Baker v. Eisenstadt, 456 F.2d 382, 385 (1st Cir.1972) (vacating multiple contempt convictions when defendant refused to answer forty-three questions in a single hearing); United States v. Or-man, 207 F.2d 148, 160 (3d Cir.1953) (vacating multiple contempt convictions when a defendant refused to answer multiple questions in a single hearing); United States v. Costello, 198 F.2d 200, 204 (2d Cir.1952) (A.Hand, J.) (vacating multiple contempt convictions for refusing to answer multiple, related questions during a single hearing); People ex rel. Amarante v. McDonnell, 100 N.Y.S.2d 463, 467 (N.Y.Sup.Ct.1950) (vacating multiple contempt convictions for refusing to answer seven questions before a single grand jury).
Yates, however, does not stand for the proposition that a witness may refuse to testify at two separate proceedings, against different defendants, and then have that refusal count as a single, continuing contempt. In fact, our sister circuits stand firmly against this understanding. In United States v. Coachman, 752 F.2d 685 (D.C.Cir.1985), “[witnesses] were twice held in criminal contempt, first when they refused to testify during a grand jury investigation, and again when they refused to testify at a trial emanating therefrom.” Id. at 687. The D.C. Circuit “conclude[d] that a witness [was] contemptuous in both operations [by defying] governmental authority in each of those separate manifestations, and [wa]s guilty of separate con-tempts.” Id. at 691. In In re Boyden, 675 F.2d 643 (5th Cir.1982), a witness refused to testify at three separate trials against three separate defendants allegedly involved in a single drug-smuggling conspiracy. Id. at 644. The Fifth Circuit held that the witness committed three separate offenses because “[i]n each case that Boy- *619 den was called to testify, the government had to prove a separate offense [against the smugglers]. His testimony would overlap only because of the cases’ common origin.” Id. Likewise, in United States ex rel. Ushkowitz v. McCloskey, 359 F.2d 788 (2d Cir.1966), a witness was called to testify before a grand jury; he refused, was convicted of criminal contempt, and served his sentence. Id. at 789. Once the witness finished his first sentence, the government called him to testify before the same grand jury again, and the court upheld another criminal-contempt conviction. Id. This cycle repeated again, and the Second Circuit upheld a third conviction because although “[t]he conduct for which the sentences were imposed was similar conduct, it was engaged in on three occasions separated from each other by appreciable periods of time.” Id.
In my view, the record indicates that Farah defied two separate district-court orders by refusing to testify at two separate proceedings and, thus, committed two separate contempts. In April 2012, the district court ordered Farah to testify at “the Adan trial” involving nine of the Somali Outlaws defendants. R. 23 at 18:6-8 (Apr. 18, 2012 Hr’g Tr.) (Page ID # 86) (Case No. 3:12-er-85). In September 2012, the district court ordered Farah to testify at a deposition to be used in the four other Adan trials, involving the twenty-one other defendants. The subject matter of Fa-rah’s testimony might have been similar at both proceedings, but, as in Boyden, “[h]is testimony would overlap only because of the cases’ common origin.” 675 F.2d at 644. In each case, he would be asked to testify to the particular defendants’ identity, actions, and voices. See R. 23 at 6:20-22 (Apr. 18, 2012 Hr’g Tr.) (Page ID # 74) (Case No. 3:12-er-85). Moreover, like the defendant in Coachman, Farah defied “governmental authority in [two] separate manifestations,” 752 F.2d at 691, and Fa-rah refused to testify “on [two] occasions separated from each other by [an] appreciable period[ ] of time,” McCloskey, 359 F.2d at 789. As a result, I see very little in common between Farah’s case and Yates.
For me, the most analogous binding precedent is Bullock v. United States, 265 F.2d 683 (6th Cir.1959), a case that the majority dismisses as “distinguishable on the facts.” Majority Op. at 610. In Bullock, the district court had entered a preliminary injunction, prohibiting individuals from interfering with the desegregation of the local schools. 265 F.2d at 687. In late August 1956, the defendant — Frederick John Kasper — “threatened to have the principal of the school ousted” if he allowed integration, and Kasper “took other steps aimed at ... restarting] segregation in the high school....” Id. For this behavior, he was found guilty of criminal contempt. Id. at 688. A few months later, Kasper returned to his despicable ways, encouraging others to block the entry of African-American students to the high school and to beat the minister escorting the children to the schoolhouse door. Id. at 687. Shortly thereafter, the federal government brought various charges against Kasper and others, including a second criminal-contempt charge for Kasper. The jury convicted Kasper of criminal contempt, and he challenged this conviction on double jeopardy grounds. We bluntly stated: “Under the Constitution Kasper is not immune from prosecution for contempt of court committed in November and December, 1956, simply because he was found guilty of a similar contempt which occurred in August, 1956.” Id. at 695. The same should be said here. Farah’s conviction for refusing to testify at a trial in April 2012 involving certain defendants does not, in my view, render him immune from a second prosecution for defying a *620 court’s order to testify at a deposition in September 2012 to be used in trials involving a different set of defendants.
Importantly, I do not believe that that the government could call Farah as a witness at the trial of one of those twenty-one other defendants and obtain a third criminal-contempt conviction if Farah refused to testify. In refusing to testify at the deposition, which would be used in the prosecution of the other twenty-one defendants, Farah has carved out his zone of silence with regard to the prosecution of those defendants. He has suffered the penalty for that silence. Calling Farah to testify at a subsequent proceeding in the same prosecution would be hardly different than asking him multiple questions regarding a certain subject in a single proceeding, a practice prohibited by Yates. The key difference between the second conviction in this case and this hypothetical third conviction is that in September 2012 Farah had never been ordered to testify about that which he refused to testify. If the government called Farah to testify in the actual trial of one of the twenty-one defendants who were the subject of the deposition, that would no longer be true — the government would be seeking a subsequent conviction for a continuing refusal to testify about a subject to which Farah had already been ordered to testify.[2]
Moreover, the text of 18 U.S.C. § 401(3) makes this distinction clearer. A person must “disobe[y] or resist[ ] [a court’s] lawful writ, process, order, rule, decree, or command” to violate § 401(3). In the first order, the court compelled Farah to testify regarding nine defendants and their crimes. When faced with this order to testify at those defendants’ trial, Farah could not defy the order by refusing to testify to about twenty-one other people under indictment and their crimes. In each case, the government needed different information, and therefore, two orders were needed. Whether Farah made his intent to defy the district court’s future orders known in advance is beside the point because there was no second violation of the statute until he actually defied the second order. Therefore, Farah’s refusals are two separate criminal actions.
Finally, it should be noted that in these types of cases, such “contumacious refusals] to answer not only frustrate[] the inquiry but can destroy a prosecution,” as may have happened in the first trial. United States v. Wilson, 421 U.S. 309, 316, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975). “Here it was a prosecution; the same kind of contumacious conduct could, in another setting, destroy a defendant’s ability to establish a case.” Id. Given the evidence in the record, it is clear to me that Farah frustrated the public’s right to every person’s evidence on two separate occasions and placed himself in jeopardy of two separate charges. I see no double jeopardy problem, and for this reason, I respectfully dissent from Part III.A of the majority opinion.

. Ultimately, six of the defendants in this trial were acquitted of all charges; the other three defendants were convicted of lesser-included offenses.

. In the abstract, this rule may allow the government to break its prosecutions into multiple trials in order to obtain multiple contempt convictions. As a practical matter, I doubt that it would be in the government's interest to do so, and more importantly, there would likely be serious due-process concerns if there were evidence that the government was manipulating its prosecution of cases merely to pile on contempt charges against a potential witness. See Boyden, 675 F.2d at 644 (“There is no indication that [the witness] was called for the sole purpose of being bludgeoned with contempt penalties.”).